Johnston, Judge.
I am of opinion that this case is not affected by the act of 1784. That act converted no estates tail into estates in see, but such whereof there was a person “ seised and possessed,” and confirmed only such alienations in see as had been made by tenants in tail in possession since the year 1777. Joseph Wells aliened the land in 1760, and no one has ever been “seized in tail therein from that period to this day.” I think this therefore a casus omissus; one for which the legislature has not made provision in their act of 1784. I am also of opinion, that if the plaintiff is entitled to recover at all, he is entitled to recover the whole of the land contained in the declaration of ejectment: for that the act *403 of 1784 and 1795 regulated the descent of see simple estates alone, and meddled not with she descent of entails. On all the other points my opinion is favorable to the defendant. I incline to the belief that Joseph Wells was actually seized in fee at the time of his conveyance to Stephen Lee; and that if he were seised in tail, a discontinuance was operated by the conveyance, which barred the right of entry of his issue. This conveyance I think should be regarded as a seossment; but if it were viewed as a bargain and sale, there was a clear warranty annexed, which gave it the lame effect as to the operation of a discontinuance. With respect to the statute of limitations, I entertain no doubt but that, as neither entry nor claim has been made on Stephen Lee or his heirs, within seven years after the right to defeat his title had first descended (that is within seven years after the death of Joseph Wells,) and as the person then entitled to make such entry, or bring such suit, did not come within any of the exceptions mentioned in the act, the lessor of the plaintiff could not disturb the possession of the defendant. The long possession of Lee and of those claiming under him, is, in the words of the act, “ a perpetual bar against all and all manner of persons whatever.”
Hall, Judge,
I think that Joseph Wells was seized of an estate tail and not in see simple, at the time he conveyed the premises in question to Stephen Lee. I also think that that conveyance did not work a discontinuance of the estate tail, because I consider it to be only a deed of bargain and sale, which of itself would not have that effect, and that there is not contained in it any *404 such warranty as would qualify it to produce that effect. Were these the only points in the case, I should be of opinion that the plaintiff would be entitled to recover, as the reasons and authorities on which this opinion is founded, are fully contained in the arguments of the Plaintiff's counsel, I suppose it to be unnecessary here again to repeat them. But there is another point made in the case, founded on the act of limitations, which as I have thought somewhat more doubtful, I have endeavoured to consider more fully; and I think from the best consideration I have been able to give it, that that point should be decided in favour of the defendant. If each of the issue of tenant in tail as they may happen to become entitled to the estate tail, are to be considered as quite distinct persons, and possessing distinct rights, no way dependant one on the other, then this opinion must be erroneous, because-the act gives the right of entry or making claim within seven years next after their right or title shall accrue or descend, and it cannot be said that the right of entry accrues to any one, until the death of the person entitled to the estate tail next before him. This may be more fully illustrated by the case put by Mr. Haywood, of the tenant for life and the reversioner, which I think good law, for surely the laches of the tenant for life would not prejudice the right of the reversioner, because their rights are distinct. Mr. Butler, in note 281 upon Littleton, section 595, says, amongst other things, “ that though "the estate of the tenant in tail as to his right of "possession, or rather, as to his beneficial pro "perty in the lands, has only a duration for the "term of his life, yet in the eye of the law he “is considered as seized of an estate of inheri *405 "tance.” In the case of Penyston versus Lyster, Cro. Eliz. 896, it was decided “that if tenant“ in tail conveys by bargain and sale, and the “ bargainee levies a fine with proclamations, and five years pass in the life of the bargainor, who dies, this fine shall not bar the issue in tail, but he shall have five years after the death of his father, because the father could not enter to avoid the fine, and his issue was the first to whom the right defended. But it is said in the same case, that if tenant in tail had been disseised, and the disseissor had levied a fine, and the tenant in tail had suffered the five years to pass, &c. that shall bind his issue, because the tenant in tail had a right at the time the fine is levied, and therefore the issue was not within the having. So we see that the issue are not barred in the first case, because the father could not enter against his bargain and sale; but in the latter case they are, because the right of entry was in the father, which he did not avail himself of. The same distinction is taken in Sheppard’s Touchstone, page 32 and 33, and the causes there cited, where it is said "if a tenant in tail discontinue in see, and the dicontinuee levieth a fine with proclamations, and five years do pass, and tenant in tail dieth, in this case his issue shall have five years after the descender to bring his formedon; but if tenant in tail discontinue rendering tent and die, and the issue accept the rent (which deth bar him for his time) and then the discontinuee levieth a fine and dieth; in this case the issue of the issue shall not be barred by the five years after the fine, but shall have five years after the death of the issue. Here it is strongly implied, that if the issue had not accepted the rent, but *406 had suffered five years to pass, his issue would have been barred. To the same effect, see 1 Dy. 3, a, 3 Com. 358 and 9. 3 Coke 87, and many other books. It may therefore be said, if the tenant in in tail to whom the right first accrues, does not pursue his right in time, his issue shall be barred; but if lessee for life levy a fine or make a seossinent in lee, and the seossee doth levy a fine, he in reversion of remainder shall not be bound by the next five years after the fine levied, but shall have five years next after the death of tenant for life. Cro. Car. 156 7, Shep. Touchstone 32, and the cases there cited. 3 Com. 358 9. Thus we see that in this respect, the rights of the issue in tail cannot be likened to to those of a tenant for life and those of a remainderman, &c. But it may he said and truly, that these adjudications were not made on the statute 21 ft James I. chap. 16: ’Tis true that is not the case; but in the statute on which they were made, there is a saving to all persons, provided they affect their right within a certain time after it accrues; and I merely mention those cases to shew, that if the right first accrued to the tenant in tail, and he did not exercise it in proper time, the issue were barred. The time of limitations in a formedon by Sta. 21 ft Jac. is 20 years; within which space of time after his title accrues, the demandant must bring his actions, or else is forever barred. 3 Bl. 192. Now in case twenty years" should elapse during the life of the issue in tail, and that issue dies. I am not aware at present of any adjudged case that would entitle the issue of that issue to his action at any time within twenty years more. The same statutes which it is said our act of limitation so *407 much resembles, gives the right of entry, provided that right is exercised within twenty years, and it appears to me that in case the right of entry is once lost, that, right can no more be revived in any succeeding issue, than can the right to bring a second formedon. With respect to the case of Hunt vs. Bowine in 1 Com. Rep. 124, relied on by plaintiff ’s counsel, it is to be observed that the right of entry then did not exist until within twenty years before it was made. There was a discontinuance, and the right of entry was thereby taken away; and the right of entry did not exist till the discontinuance ceased, which happened within twenty years before the entry made. If twenty years had elapsed during the life of the issue without entry, after the right of entry accrued and he had died, and the entry of his issue had been held good, then indeed it would have been an authority in point. Joseph Wells, in the present case, had no tight of entry, that first attached to David after his death, which happened in 1787; David died in 1798, without having exercised that right, more than seven years after the death of his father: I therefore think judgment should be for the defendant.
Macay Judge.—Let judgment be entered for the defendant.